ENTERED
LOGGED
RECEIVED

KOH: USAO2014R00054

JUN 2 5 2014

IN THE UNITED STATES DISTRICT COURT CLERK, U.S. DISTRICT COURT AT GREENBELT
FOR THE DISTRICT OF MARYLAND By   DISTRICT OF MARYLAND
AT

DEPUTY

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | **CRIMINAL NO.** DKC 14-cr-316 |
| | * | |
| **PARAMJIT SINGH AJRAWAT, and** | * | **(Health Care Fraud, 18 U.S.C. § 1347;** |
| **SUKHVEEN KAUR AJRAWAT,** | * | **Aiding and Abetting, 18 U.S.C. § 2;** |
| | * | **Forfeiture, 18 U.S.C. § 981(a)(1)(C), 28** |
| **Defendants** | * | **U.S.C. § 2461(c))** |
| | * | |

\*\*\*\*\*\*\*

## INDICTMENT

## COUNTS ONE THROUGH SIXTEEN

The Grand Jury for the District of Maryland charges that:

### Introduction

At all times relevant to this Indictment:

1.      Defendants **PARAMJIT SINGH AJRAWAT ("P. AJRAWAT")** and **SUKHVEEN KAUR AJRAWAT ("S.K. AJRAWAT")**, owned and operated Washington Pain Management Center ("WPMC"), a health care provider specializing in chronic pain management, located in Greenbelt, Maryland.

2.      **P. AJRAWAT** was a licensed physician in the state of Maryland, and specialized in Interventional Pain Management.

3.      **S.K. AJRAWAT** was a licensed psychiatrist in the state of Maryland, and responsible for the office administration, including the billing practices, of WPMC.

**Health Care Benefit Programs**

4.      Medicare was a health care benefit program under 18 U.S.C. § 24(b); that is, a public plan, affecting commerce, under which medical benefits, items, and services were provided to individuals.    Typically, Medicare provided insurance coverage to people over the age of 65 and eligible individuals under 65 years of age with certain disabilities.

5.      Medicaid was a health care benefit program under 18 U.S.C. § 24(b). Medicaid was jointly funded by a state and the federal government.    Typically, Medicaid provided insurance coverage to individuals with low incomes and resources.

6.      The Centers for Medicare & Medicaid Services ("CMS") was a federal agency within the United States Department of Health and Human Services and was responsible for administering the Medicare and Medicaid programs.

7.      The United States Department of Labor's Office of Workers' Compensation Programs ("OWCP") was a health care benefit program under 18 U.S.C. § 24(b).   OWCP administered four major disability compensation programs that provided wage replacement benefits, medical treatment, vocational rehabilitation, and other benefits to federal employees and their dependents who experienced work-related injury or occupational disease.

8.      The U.S. Office of Personnel Management's ("OPM") Federal Employees Health Benefits Program ("FEHBP") was a health care benefit program under 18 U.S.C. § 24(b). FEHBP provided insurance to federal employees, retirees, and their eligible spouses and dependents.  OPM contracted with a number of different health insurance plans, which process and pay health care claims on behalf of the FEHBP.

2

9.     The TRICARE Program was a health care benefit program under 18 U.S.C. § 24(b).  TRICARE provided insurance to eligible beneficiaries, to include members of the Uniformed Services, family members, spouses and children of active duty uniformed services personnel, retirees and their spouse and dependent children, and spouses and children of deceased retired Uniformed Services personnel.

10.    A medical provider certified to participate in a health care benefit program, such as those described above, was assigned a provider identification number ("PIN") for billing purposes. A medical provider rendering a service was required to use its assigned PIN when submitting a claim for reimbursement from the health care benefit program.

11.    Each medical provider was permitted to submit claims to health care benefit programs only for services actually rendered, and was required to maintain patient records verifying the provision of services.

12.    To receive reimbursement for a covered service from a health care benefit program, a medical provider was required to submit a claim, either electronically or in hard copy. The claim had to be made on a form known as a Health Insurance Claim Form or "HCFA-1500."

13.    The HCFA-1500 included information identifying the medical provider, the rendering physician, the patient, and the services rendered. By submitting the claim, the provider certified, among other things, that the services were rendered to the patient and were medically necessary.

14.    Provider claims also included billing codes, or Current Procedural Terminology ("CPT") codes, which were numbers that referred to specific descriptions of medical services provided to beneficiaries.

3

a.     For instance, CPT codes 64483 and 64484 related to epidural injections and were defined as injection(s), anesthetic agent and/or steroid, transforaminal epidural, with imaging guidance (fluoroscopy or computerized tomography); lumbar or sacral, single level. To bill these codes, therefore, the physician must have performed an epidural injection using imaging guidance, meaning the use of a fluoroscopy or computerized tomography ("CT") machine.

b.     CPT code 97032 was defined as a therapeutic procedure and was a constant attendance electrical stimulation modality that required direct one-on-one manual patient contact by the qualified professional.

c.     CPT Code 97110 was defined as a therapeutic procedure in one or more areas, each for 15 minutes. Therapeutic exercises were to be performed to develop strength and endurance, range of motion and flexibility. The physician was required to have direct one-on-one patient contact.

d.     CPT code 97530 was defined as a therapeutic procedure, lasting 15 minutes, that uses dynamic activities to improve functional performance. The physician was required to have direct one-on-one patient contact.

15.     Once a provider submitted an HCFA-1500 regarding a particular patient or reimbursement claim, and once that claim had been approved for reimbursement, the Medicare carrier, Medicaid, OWCP, TRICARE, FEHBP, or a private insurance carrier would reimburse the provider. The health care benefit program carrier typically electronically deposited or mailed the reimbursement check to the provider.

4

**The Scheme and Artifice to Defraud**

16.     From at least in or about August 2008 through in or about May 2014, the defendants,

**PARAMJIT SINGH AJRAWAT, and
SUKHVEEN KAUR AJRAWAT,**

knowingly and willfully devised and intended to devise a scheme and artifice to defraud health care benefit programs, to include but not limited to Medicare, Medicaid, TRICARE, Federal Employees Health Benefits Program, and Office of Workers' Compensation Programs, and to obtain, by means of material false and fraudulent pretenses, representations, and promises, money and property owned and under the custody and control of health care benefit programs, to include but not limited to Medicare, Medicaid, TRICARE, Federal Employees Health Benefits Program, and Office of Workers' Compensation Programs, in connection with the delivery of and payment for health care benefits, items, and services, as set forth more fully below ("the scheme and artifice to defraud").

**The Scheme and Artifice to Defraud**

17.     It was part of the scheme to defraud that **P. AJRAWAT** and **S.K. AJRAWAT** caused false and fraudulent claims to be submitted to health care benefit programs for CPT codes 64483 and 64484 by submitting or causing the submission of such claims for procedures conducted by **P. AJRAWAT** other than epidural or other qualified injections. For instance, instead of epidural injections, **P. AJRAWAT** would perform less invasive injections, to include nerve-block injections and trigger-point injections using lidocaine, which was not indicated for epidural use.

5

18.    It was further part of the scheme to defraud that **P. AJRAWAT** would perform the injections for which **P. AJRAWAT** and **S.K. AJRAWAT** caused false and fraudulent claims to be submitted to health care benefit programs for CPT codes 64483 and 64484 without the use of imaging guidance, as required by such CPT codes. Rather, **P. AJRAWAT** would manually feel the area to be injected prior to the injection.

19.    If was further part of the scheme to defraud that **P. AJRAWAT** and **S.K. AJRAWAT** falsely documented that an ultrasound machine was used to direct needle placement in patient files for which **P. AJRAWAT** and **S.K. AJRAWAT** falsely billed CPT codes 64483 and 64484.

20.    It was further part of the scheme to defraud that **P. AJRAWAT** and **S.K. AJRAWAT** caused false and fraudulent claims to be submitted to health care benefit programs for CPT codes 97032, 97110, and 97530, which all require one-on-one patient contact, without any authorized physician or therapist having had any direct contact with the patients during treatment. Rather, the physical therapy consisted of a small amount of exercise performed by the patient on their own, which was not monitored by **P. AJRAWAT** or a licensed physical therapist.

21.    It was further part of the scheme to defraud that the defendants caused or attempted to cause the destruction and fabrication of patient files for which the defendants caused false or fraudulent claims to be submitted to health care benefit programs. Specifically, **P. AJRAWAT** and **S.K. AJRAWAT** caused the alteration and destruction of patient files which falsely indicated that an ultrasound machine was used for patients for whom **P. AJRAWAT** and **S.K. AJRAWAT** caused false claims to be submitted using CPT codes 64483 and 64484.

6

## The Charges

22.     On or about the dates listed below, in the District of Maryland and elsewhere, the

defendants,

### PARAMJIT SINGH AJRAWAT, and
### SUKHVEEN KAUR AJRAWAT,

knowingly and willfully executed, and attempted to execute, the scheme and artifice to defraud,

and to obtain, by means of materially false and fraudulent pretenses, representations, and

promises, money and property owned by, and under the custody and control of, the federal health

benefit programs listed below, in connection with the delivery of and payment for health care

benefits, items, and services, as indicated below:

| Count | Federal Program | Claim Identification Number | Beneficiary | Date of Service | CPT Code |
|---|---|---|---|---|---|
| 1 | Medicaid | 20909800001019677 | R.B. | Dec. 1, 2008 | 97110 97530 97032 |
| 2 | Medicaid | 21332500001002675 | O.M. | Aug. 13, 2013 | 64484 64483 |
| 3 | Medicaid | 21331700001048376 | O.M. | Aug. 13, 2013 | 97110 97530 97032 |
| 4 | TRICARE | 2012048MD982830737285 | W.F. | Nov. 29, 2011 | 97110 97530 97032 |
| 5 | TRICARE | 2012049MD976811218455 | W.F. | Nov. 29, 2011 | 64483 64484 |
| 6 | TRICARE | 2012338MDX16D80152115 | J.L. | Nov. 30, 2012 | 64483 64484 97110 97530 97032 |
| 7 | TRICARE | 2013163MDX34Z84004195 | J.L. | Nov. 30, 2012 | 64483 64484 |
| 8 | Medicare | 571409050254360 | M.C. | Jan. 8, 2009 | 97032 97110 |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | 97530 |
| 9 | Medicare | 571412268259490 | S.J. | Sept. 18, 2012 | 64483<br>64484 |
| 10 | Medicare | 571413091005370 | S.J. | Sept. 18, 2012 | 97032<br>97110<br>97530 |
| 11 | OWCP | 1105971180008950 | D.S. | Feb. 17, 2011 | 64483<br>64484 |
| 12 | OWCP | 1208671517070549 | K.H. | Mar. 2, 2012 | 64483<br>64484 |
| 13 | FEHBP | 1192B03953P | E.S. | May 16, 2011 | 64483<br>64484 |
| 14 | FEHBP | 1192B03954P | E.S. | May 16, 2011 | 97032<br>97110<br>97530 |
| 15 | FEHBP | 3157600680P | R.H. | May 20, 2013 | 64483<br>64484 |
| 16 | FEHBP | 3157600683P | R.H. | May 20, 2013 | 97032<br>97110<br>97530 |

18 U.S.C. § 1347
18 U.S.C. § 2

8

## FORFEITURE ALLEGATION

The United States Attorney for the District of Maryland further finds that:

1.     Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 982(a)(7), as a result of the defendant's conviction under the Indictment.

2.     As a result of the offense set forth in Counts One through Sixteen of the Indictment, the defendants,

### PARAMJIT SINGH AJRAWAT, and
### SUKHVEEN KAUR AJRAWAT,

shall forfeit to the United States, all property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violations. The property to be forfeited includes, but is not limited to, the following:

      a.     Personal and real property, including vehicles and U.S. currency;

      b.     $2,329,109 in United States currency and all interest and proceeds traceable thereto, in that such sum in aggregate is proceeds obtained, directly or indirectly, as a result of such violation; and

3.     If any of the property described above as being subject to forfeiture, as a result of any act or omission of any defendant:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third person;

      c.     has been placed beyond the jurisdiction of the Court;

      d.     has been substantially diminished in value; or,

e.      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property, that is, $2,329,109.

18 U.S.C. § 982(a)(7)
21 U.S.C. § 853(p)

Rod J. Rosenstein
United States Attorney

A TRUE BILL:

SIGNATURE REDACTED

Foreperson

6/25/2014

Date